IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,
   *Plaintiff*,

v.

JARREL LAMONT ANDERSON,
   *Defendant*

Civil Action No. ELH-19-302

## MEMORANDUM

This Memorandum resolves a "Motion For Review Of An Order Of Detention" (the "Appeal") filed by defendant Jerrel Anderson on April 16, 2020. ECF 76. He challenges the ruling of U.S. Chief Magistrate Judge Beth Gesner on October 4, 2019 (ECF 37), ordering him detained pending trial. The government opposes the Appeal. ECF 77. Anderson has not replied.[1]

No hearing is necessary to resolve the Appeal. *See* Local Rule 105.6.[2] For the reasons that follow, I shall deny the Appeal.

### I. Procedural Background

Jerrel Anderson and two others were charged with drug and firearms offenses in an indictment filed on June 19, 2019. ECF 1. In particular, Anderson is charged in four of five counts, as follows: conspiracy to distribute and possess with intent to distribute 500 grams or more

---

[1] In light of COVID-19, the judges of this Court have set an expedited briefing schedule in these types of matters.

[2] Although the Bail Reform Act does not address whether a defendant is entitled to an in-court hearing on an appeal of detention, Judge Grimm assessed the issue recently and found "ample authority for the conclusion that the Court may decide the motion on the filings . . . as opposed to a hearing." *United States v. Martin*, PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020).

At the request of the Court (ECF 78), I have been provided with two reports from pretrial services. One is dated July 26, 2019, and the other is dated March 25, 2020.

of cocaine and 28 grams or more of cocaine base, in violation of 21 U.S.C. §§ 846, 841(a) & (b)(1)(B) (Counts One and Two); using or carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Three); and unlawful possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g) (Count Four).  If convicted on all counts, defendant faces a maximum sentence of life imprisonment.

Anderson initially appeared in court on July 24, 2019, during which the government moved for his detention.  Magistrate Judge J. Mark Coulson entered a temporary order of detention and set a detention hearing for July 27, 2019.  ECF 21.  The hearing was rescheduled for August 7, 2019, and defendant consented to his detention pending the hearing.  ECF 23.

Anderson submitted a "Line" to the court on August 5, 2019, consenting to "detention at this time," thereby obviating the need for the hearing.  ECF 24.  At defendant's arraignment held on August 12, 2019, Magistrate Judge A. David Copperthite ordered Anderson detained pending trial "by agreement of the parties without prejudice to either side requesting a prompt hearing to set appropriate conditions of release or otherwise address the detention of the defendant."  ECF 26.

On September 20, 2019, a detention hearing was set for October 4, 2019.  *See* Docket.  On that date, Chief Magistrate Judge Beth Gesner presided at the detention hearing.  ECF 36.  Thereafter, Judge Gesner entered an Order of Detention, pursuant to 18 U.S.C. § 3142.  ECF 37.

Judge Gesner determined that the government was entitled to a presumption of detention under 18 U.S.C. § 3142(e), in light of the charges in the indictment.  ECF 37.  Further, applying the factors set forth in the Bail Reform Act, 18 U.S.C. § 3142(g), Judge Gesner found by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of the public.  *Id.* at 1.  In reaching her conclusion, Judge Gesner found that the charged

offenses were serious; the weight of the evidence was strong; Anderson's criminal history included the "same offense as charged here—handgun in a vehicle"; and Anderson allegedly committed the charged crimes while on probation. *Id.*

On March 22, 2020, Anderson filed a "Motion For Review of Detention by Agreement." ECF 73. In that motion, he stated that he had previously consented to detention, *id.* ¶ 3, but now wanted a hearing. *Id.* ¶ 4. Based on that assertion, it was a matter to be handled in the first instance by a magistrate judge. Magistrate Judge A. David Copperthite scheduled a hearing for March 27, 2020. *See* Docket. But, he determined that, in fact, the defendant had a contested detention hearing in October 2019. ECF 75. Therefore, he canceled the hearing. *Id.*

This Appeal followed on April 16, 2020. ECF 76.

## II. Standard of Review

The Bail Reform Act (the "Act"), 18 U.S.C. § 3141 *et seq.*, governs the release or detention of a defendant pending trial. As is relevant here, the government may move for a defendant's pretrial detention if the case involves the possession of a firearm. *Id.* § 3142(f)(1)(E). If, the court determines, following a hearing, that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the court "shall order the detention of the person before trial." *Id.* § 3142(e)(1).

"In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019). The test is disjunctive; a finding on either ground compels the defendant's detention. *See United States v. Salerno*, 481 U.S. 739, 754-55 (1987). But, the burden of proof differs: the government must establish that a defendant is a flight risk by a preponderance of the evidence,

whereas the defendant's danger to the community must be proven by clear and convincing evidence. *See United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (per curiam).

In deciding whether detention is necessary, the court "is not given unbridled discretion." *Salerno*, 481 U.S. 742. Rather, the Act directs the court to "take into account the available information concerning" four factors. 18 U.S.C. § 3142(g). Those factors include, *id.*:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3)  the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

Ordinarily, a defendant should not be detained pending trial. *See Salerno*, 481 U.S. at 755 ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."); *accord United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). However, the default rule is replaced by a presumption in favor of detention where the defendant is charged with certain crimes. Specifically, the Act creates a rebuttable presumption "that no condition or combination of conditions will reasonably assure . . . the safety of the community if . . . there is probable cause to believe that the person committed" one of an enumerated list of crimes,

including a crime carrying a maximum term of imprisonment of ten years or more under the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, or a violation of 18 U.S.C. 924(c). 18 U.S.C. § 3142(e)(2). For purposes of making that determination, "[a] grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged." *Stone*, 608 F.3d at 945; *see United States v. Sheikh*, 994 F. Supp. 2d 736, 739 (E.D.N.C. 2014).

Once triggered, "the burden of production shifts to the defendant to come forward with evidence to suggest that the presumption is unwarranted in his or her particular case." *United States v. Boyd*, 484 F. Supp. 2d 486, 488 (E.D. Va. 2007); *see also United States v. Taylor*, 289 F. Supp. 3d 55, 63 (D.D.C. 2018). To do so, the defendant must proffer "at least some evidence" or basis to conclude that the case falls "outside 'the congressional paradigm'" giving rise to the presumption. *Ston*e, 608 F.3d at 945-46 (quoting *United States v. Jessup*, 757 F.2d 378, 387 (1st Cir. 1985)). If the defendant offers evidence to counter the presumption, it does not fall out of the picture entirely but rather remains a factor in the court's totality-of-the-circumstances analysis. *See Stone*, 608 F.3d at 945; *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001); *Taylor*, 289 F. Supp. 3d at 64.

Of import here, the Act provides that a defendant "ordered detained by a magistrate judge, . . . may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order," and "the motion shall be determined promptly." *Id.* § 3145(b). The district court reviews the magistrate judge's ruling *de novo* "and must make an independent determination of the proper pretrial detention or conditions of release." *Stewart,* 19 F. App'x at 48; s*ee also United States v. Clark*, 865 F.2d 1433, 1436 (4th Cir. 1989). In particular, the court must determine whether there are conditions of release that will reasonably assure the safety of

the community. In undertaking this examination, the court "'is free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons.'" *United States v. Sheffield*, 799 F. Supp. 2d 18, 20 (D.D.C. 2011) (citation omitted).

### III. Discussion

Anderson moves for reconsideration of his detention under 18 U.S.C. § 3145(b). ECF 76 at 2. In his two-page Appeal, defendant identifies no specific error with Judge Gesner's ruling.[3] He fails to explain what conditions of release would assure the community's safety if he were released. Nor does he provide even a mote of evidence to rebut the presumption of detention. Instead, Anderson simply states that he "believes that the presumption was rebutted and that there are conditions of release that can be set to ensure community safety." *Id.*

Having considered the relevant factors, I find that no condition or combination of conditions of release would reasonably assure the safety of the community pending trial. Further, although Anderson does not invoke the current COVID-19 pandemic as a basis for his release, I find that the public health crisis does not compel his release.

First, I agree with Judge Gesner that Anderson poses a danger to the community if released. Anderson is charged with conspiracy to distribute and possession with intent to distribute cocaine and cocaine base, using or carrying a firearm during and in relation to a drug trafficking crime, and unlawful possession of a firearm. *See* ECF 1. These are indisputably serious charges. Indeed, Congress deemed these acts so serious that it established a statutory presumption in favor of pretrial detention. 18 U.S.C. § 3142(e). Significantly, Anderson has adduced not a single shred

---

[3] Similarly, the initial motion (ECF 73), which was one page in length, did not specify a reason for the requested review.

of evidence to rebut the presumption that his release will not endanger the community. Therefore, he must be detained pending trial, pursuant to 18 U.S.C. § 3142(e).

Assuming, *arguendo*, that defendant rebutted the presumption in favor of his detention, the § 3142(g) factors would compel the same outcome. The weight of the evidence against Anderson is strong and favors detention. The government proffers that it obtained evidence of Anderson trafficking controlled substances through authorized wiretaps and video surveillance. ECF 77 at 4. For instance, the government asserts that in March 2019, law enforcement intercepted defendant agreeing to sell 1.5 kilograms of cocaine to one of his co-conspirators for about $35,000; video surveillance from the parking garage of the Horseshoe Casino in Baltimore captured Anderson meeting with his supplier and then his coconspirator on March 25, 2019; and a kilogram of cocaine was later recovered from a downstream purchaser. *Id.* at 4-5. Moreover, when Anderson was arrested on April 23, 2019, law enforcement recovered 42 grams of cocaine base, drug distribution paraphernalia, and a loaded .22 caliber pistol. *Id.* at 5.

Anderson's criminal history also illustrates that he presents a serious risk to public safety. As recounted in the Pretrial Services Report prepared by U.S. Probation and Pretrial Services, Anderson has convictions for possession of a firearm by a prohibited person, possession of controlled substances, fraud, first-degree assault, and fourth-degree burglary. And, the Report reveals that Anderson has a poor track record with community supervision: he was found to have violated the terms of his probation in 2014, and it appears that he was still on parole at the time of the instant offenses. *Id.* at 6.

In addition, Anderson fails to put forth a combination of conditions that would adequately ensure the public's safety if he were released. Indeed, defendant's proposed custodian, his aunt, advised Probation and Pretrial Services that she would not allow Anderson to return to her home.

This problem is confounded by the fact that the usual tools of supervision are not readily available, as they have been adversely affected by the COVID-19 outbreak.  Probation and Pretrial Services has recently advised that it is no longer providing new electronic monitoring services. Other methods of supervision would be insufficient, because they do not immediately alert if a defendant is noncompliant. *See* ECF 77 at 11-12.

Like other judges in this district, I recognize the unique threat posed by the COVID-19 pandemic, the worst the world has experienced since 1918.  *See United States v. Gray*, GJH-19-407, 2020 WL 1554392, at *1 (D. Md. Apr. 1, 2020); *United States v. Jefferson*, CCB-19-487, 2020 WL 1332011, at *1 (D. Md. Mar. 23, 2020); *United States v. Martin*, PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020).   The virus is highly contagious; it spreads "easily and sustainably" from person-to-person.  *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTR. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh. Asymptomatic carriers can spread COVID-19, and scientists estimate that the average infected person transmits the disease to between two and four others.  *See*  Jenny Gross & Mariel Padilla, *From Flattening the Curve to Pandemic: A Coronavirus Glossary*, N.Y. TIMES (Mar. 18, 2020), https://nyti.ms/3aW4yAI.  The disease is also highly fatal, having claimed thousands of lives in the United States to date. *See Coronavirus Disease 2019 (COVID-19), Cases in the U.S.*, CTR. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/2y6wfIq (last visited Apr. 10, 2020).

Moreover, I acknowledge that correctional facilities are ill-suited to prevent outbreaks and mitigate their spread. *See, e.g.*, *United States v. Goss*, 15-cr-769 (AJN), 2020 WL 1673244, at *1 (S.D.N.Y. Apr. 6, 2020).  Social distancing—the only presently effective measure to reduce the risk of infection—is indeed exceedingly difficult for people confined in detention centers.  And,

one who becomes ill would understandably prefer the comforts of home, rather than the confines of a penal facility.

Here, however, Anderson does not allege that he has been stricken with the virus. Nor does he assert that he is at heightened risk of becoming seriously ill if infected. Moreover, he does not challenge the adequacy of the safety measures implemented by the facility where he is being housed.

Anderson, who is 30 years old, is presently detained at the Chesapeake Detention Facility ("CDF"), which is managed by the Maryland Department of Public Safety and Correctional Services ("DPSCS"). ECF 77 at 6, 6 n.4. According to the government, as of April 17, 2020, there were no reported cases of COVID-19 at CDF. ECF 77 at 10. The government has detailed the substantial precautionary measures that DPSCS has implemented at CDF to mitigate the possibility of an outbreak and to treat those detainees who fall ill. *Id.* at 7-10.

The generalized risks posed by COVID-19, without more, do not compel defendant's release. *See United States v. Raia*, ___ F.3d ___, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020) (concluding that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify . . . release."). Simply put, the coronavirus is "not tantamount to a 'get out of jail free card." *United States v. Williams*, PWG-13-544, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020) (Day, M.J.).

### IV.  Conclusion

For the reasons stated above, I shall affirm Judge Gesner's Order (ECF 34). Therefore, I shall deny Anderson's Appeal (ECF 76). An Order follows, consistent with this Memorandum.

Date:   April 20, 2020                                             /s/
                                                                              Ellen Lipton Hollander